IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-02150-MJW

H. DEAN WOOD,

Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

Defendant.

**OPINION AND ORDER**

**MICHAEL J. WATANABE**
**United States Magistrate Judge**

The government determined that Plaintiff is under a disability, but that a substance use disorder is a contributing factor material to the determination of disability. (AR 28).[1] Accordingly, Plaintiff was found to not be disabled under the Social Security Act. Plaintiff has asked this Court to review that decision. The Court has jurisdiction under 42 U.S.C. § 405(g), and both parties have agreed to have this case decided by a U.S. Magistrate Judge under 28 U.S.C. § 636(c).

**Standard of Review**

In Social Security appeals, the Court reviews the decision of the administrative law judge ("ALJ") to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied. *See Pisciotta v. Astrue,* 500 F.3d 1074, 1075 (10th Cir. 2007). "Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more

---
[1] All references to "AR" refer to the sequentially numbered Administrative Record filed in this case. (Docket Nos. 10 through 10-10).

than a scintilla, but less than a preponderance." *Raymond v. Astrue*, 621 F.3d 1269, 1271-72 (10th Cir. 2009) (internal quotation marks omitted). The Court "should, indeed must, exercise common sense" and "cannot insist on technical perfection." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). The Court cannot reweigh the evidence or its credibility. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

## **Discussion**

At the second step of the Commissioner's five-step sequence for making determinations,[2] the ALJ found that Plaintiff "has the following severe impairments: degenerative disc disease associated with the cervical and lumbar regions of the spine; peripheral arterial disease; and cannabis dependence causing a mood or adjustment disorder with anxiety and depressed mood as well as a personality disorder." (AR 30). The ALJ then determined that Plaintiff has the following residual functional capacity ("RFC"), as is relevant here:

> . . . [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b). However, mentally, [Plaintiff] is limited to simple, routine low stress work, defined as requiring only occasional decision making and occasional adapting to workplace change. Additionally, [Plaintiff] should have no more than occasional contact with coworkers and supervisors. [Plaintiff] should have no contact with the public.

(AR 33). The ALJ determined that "there are no jobs that exist in significant numbers in the national economy that [Plaintiff] can perform . . . ." (AR 37). The ALJ further determined that Plaintiff would continue to have a severe impairment or combination of impairments associated with degenerative disc disease and peripheral arterial disease if he stopped his substance abuse. (AR 37). The ALJ found that any mental limitations

---

[2] The Social Security Administration uses a five-step sequential process for reviewing disability claims. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

would be non-severe if Plaintiff stopped his substance abuse. (AR 37). Accordingly, the ALJ concluded that if Plaintiff stopped his substance abuse, he would have an RFC to perform the "full range of light work as defined in 20 CFR 416.967(b)." (AR 38). 20 C.F.R. § 416.967(b) defines light work as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

C.F.R. § 416.967(b). The ALJ determined that Plaintiff could "stand and/or walk up to six hours during an eight-hour workday." (AR 41). The ALJ also concluded that if Plaintiff stopped the substance use, he "would be able to perform past relevant work as Cashier's Supervisor, Cashier II and/or Printing Machine Operator." (AR 42). The ALJ explained that [t]his work does not require the performance of work-related activities precluded by the [RFC] [Plaintiff] would have if he stopped the substance use [ ]." (AR 42-43). Ultimately, the ALJ concluded that Plaintiff would not be disabled if he stopped the substance use and "[b]ecause the substance use disorder is a contributing factor material to the determination of disability, [Plaintiff] has not been disabled within the meaning of the Social Security Act at any time from the date the application was filed through the date of this decision." (AR 44).

Plaintiff asserts four reversible errors: first, that the ALJ failed to sufficiently develop the record; second, that the ALJ's determination of Plaintiff's physical capacity to perform work was not based on substantial evidence; third, that the ALJ's residual

3

functional capacity findings failed to adequately address Plaintiff's pain; and fourth, that the ALJ's conclusion that Plaintiff's use of marijuana constituted "drug addiction" within the meaning of 20 C.F.R. § 416.935 was legally erroneous. (Docket No. 15 at 5).

I. **Duty to Develop the Record**

Plaintiff first argues that the ALJ was required to further develop the record with regard to his alleged functional limitations. (Docket No. 15 at 22-23). Plaintiff also argues that the ALJ failed to order a consultative examination of his functional capacity to do work. (*Id.* at 23).

With regard to the ALJ's duty to develop the record regarding Plaintiff's alleged functional limitations, Plaintiff points to the ALJ's notations regarding the lack of a functional opinion in the record and states that "the ALJ appears to have taken that lack as an indication that [Plaintiff] had no functional limitations rather than as an indication that the record needed to be developed further." (Docket No. 15 at 22). As Defendant argues, 20 C.F.R. § 416.920b(b) makes clear that an ALJ is not required to develop the record in every circumstance. Rather, the regulation explains that an ALJ may further develop the record if the evidence submitted "is insufficient or inconsistent" and the ALJ is not able to make a determination or decision because of the insufficient or inconsistent evidence. An ALJ must "fully and fairly develop[ ] the record as to material issues," but "does not have to exhaust every possible line of inquiry." *Hawkins v. Chater*, 113 F.3d 1162, 1168 (10th Cir. 1997) (internal quotations and citation omitted). "The standard is one of reasonable good judgment." *Id.* Further, Plaintiff bears the burden of establishing a prima facie case of disability at step four, and he was represented by counsel at the administrative hearing. *Doyal v. Barnhart*, 331 F.3d 758,

4

760 (10th Cir. 2003); *Cowan v. Astrue*, 552 F.3d 1182, 1188 (10th Cir. 2008) ("[W]hen the claimant is represented by counsel at the administrative hearing, the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored.") (internal quotations and citation omitted). In this case, the ALJ had enough information to determine that Plaintiff was disabled. The ALJ only found Plaintiff not disabled after determining that his substance use was a contributing factor material to the determination of disability. Plaintiff offers no support for the idea that an ALJ is obligated to further develop the record when the ALJ concludes that a claimant is disabled.

With regard to Plaintiff's argument that the ALJ erred by not ordering a consultative examination of Plaintiff's functional capacity, Defendant argues that it is the ALJ who ultimately determines the RFC. Therefore, a specific opinion regarding the RFC is not required. (Docket No. 16 at 11). Defendant further notes that there were medical opinions regarding Plaintiff's impairments in the record. (Docket No. 16 at n.6). Defendant is correct. 20 C.F.R. § 416.927(d)(2) makes clear that the final decision with regard to the RFC is reserved to the Commissioner. As the Tenth Circuit has explained, an ALJ may review various medical opinions when reaching an RFC determination without necessarily relying on one specific opinion in totality:

> [T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question. "[T]he ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir.2004) (following 20 C.F.R. § 416.927(e)(2) and SSR 96–59, 1996 WL 374183, at \*5); *see also* 20 C.F.R. §§ 404.1546(c) and 416.946(c). We have thus "rejected [the] argument that there must be specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before an ALJ can determine RFC within that category." *Howard*, 379 F.3d at 949; *see,*

5

> e.g., *Wall*, 561 F.3d at 1068-69 (upholding ALJ's findings on mental impairment where record did not contain any treating or examining medical opinions as to allegedly disabling pain disorder); *Bernal v. Bowen*, 851 F.2d 297, 302-03 (10th Cir.1988) (holding ALJ properly made mental RFC findings without expert medical assistance).

*Chapo v. Astrue*, 682 F.3d 1285, 1288-89 (10th Cir. 2012). Here, the ALJ discussed the medical evidence and the testimonial evidence when reaching the RFC. She did not commit error by not ordering a consultative examination of Plaintiff.

## II. <u>Substantial Evidence</u>

With regard to the ALJ's determination regarding Plaintiff's subjective complaints of neuropathy, Plaintiff seems to think that the ALJ was required to rely on evidence that was submitted to the Appeals Council when Plaintiff appealed the ALJ's decision. (Docket No. 15 citing to AR 541 to support the statement that "the record contains treatment notes from a meeting with an orthopedist;" AR 2 (noting that additional medical records were considered by the Council); AR 5 (listing exhibits); AR 541). Obviously, an ALJ cannot consider evidence that a claimant has not provided to the ALJ and Plaintiff cites to no authority stating that an ALJ must consider evidence that has not been submitted to that ALJ. Accordingly, the Court concludes that the ALJ did not commit error by not considering or discussing evidence that was not submitted to her. Further, the Court notes that Plaintiff does not argue that the Appeals Council committed error when it denied Plaintiff's request for review after he submitted the additional documents, therefore the Court does not address this issue. (AR 1 (denying request for review)).

## III. Analysis of Plaintiff's Complaints of Pain

Plaintiff argues that the ALJ did not sufficiently address Plaintiff's complaints of pain and "was required to consider [Plaintiff's] pain in determining the RFC and to assign restrictions related to it." (Docket No. 15 at 28). Defendant argues that the ALJ properly considered the evidence and explained why she did not find Plaintiff's testimony believable. (Docket No. 16 at 1-17).

The ALJ explained the process she was required to follow when making her determination:

> In considering the claimant's symptoms, the undersigned must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)—i.e., an impairment(s) that can be shown by medically acceptable clinical laboratory diagnostic techniques—that could reasonably be expected to produce the claimant's pain or other symptoms.
>
> Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to do basic work activities. For this purpose, whenever statements about the intensity, persistence, or functionality limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must make a finding on the credibility of the statements based on a consideration of the entire case record.

(AR 38). *See also Luna v. Brown*, 834 F.2d 161, 163 (10th Cir. 1987). The ALJ then reviewed Plaintiff's medical records including those relating to a surgery. (AR 39). The ALJ summarized the medical records post-surgery which seem to indicate that the surgery may have improved the issue. For example:

> The claimant has attended appointments consistently since July 2014. The related objective finding within these treatment notes however are limited. Locating no specific reference to "neuropathy," a provider referred the claimant to an orthopedic. The provider consistently documented

receiving no related notes. Of note, the claimant reported left hand pain (but not neck or back pain) after shoveling snow in January 2015 [ ]. A March 2015 treatment note outlines a provider saw no "major cause for his pain" with a later notation [that] a MRI ha[d] no revealed finding [that] supports a need for neck surgery [ ]. His cervical and lumbar range of motion intact and full [ ]. No atrophy present [ ]. There is a reference the provider questioned whether the claimant's behavior is consistent with malingering (July 2015) [ ].

(AR 39). The ALJ then discussed Plaintiff's testimony. (AR 40). The ALJ explained that she did not fully credit Plaintiff's allegations regarding pain because his "allegations are [ ] inconsistent with a statement to providers he shoveled snow in January 2015." (AR 40). However, she also concluded that "it is reasonable the degenerative changes could in part result in some concerns with one or both upper extremities" but found that "the record as a whole does [not] support the degree of restrictions the claimant is alleging." (AR 40).

Looking at the ALJ's decision and the record as a whole, Plaintiff's argument that the ALJ did not address the medical records or Plaintiff's subjective complaints thoroughly enough fails. The ALJ offered a thorough analysis of the evidence before her. Further, Plaintiff's statement that the ALJ "did not" consider Plaintiff's pain in considering the RFC (Docket No. 15 at 28) is patently false.

IV. <u>**Use of Medical Marijuana**</u>

Plaintiff's final argument relates to his use of marijuana, which the ALJ determined was a contributing factor material to the determination of disability. In short, Plaintiff argues that because he has a medical marijuana card under Colorado state law, his use of marijuana could not be considered as drug addiction under 20 C.F.R. § 416.935, rather issues relating to his use of marijuana should have been considered as potential side effects of medication prescribed by a licensed medical provider. (Docket

8

No. 15 at 28-29). Defendant argues that there is no proof of a medical prescription in the record. (Docket No. 16 at 17). This is true. At one point, Plaintiff told a mental health provider that he has "a card to use ¾ to 1 gram a day for the pain," (AR 380), but this statement is not substantiated by a prescription or other medical record from the prescriber. In addition, Plaintiff told that same mental health provider that: "I did buy a gram of hash recently to celebrate Jerry Garcia's birthday." (AR 380). The records do not paint a picture of an individual who was prescribed a specific dose of marijuana for pain and who then carefully complied with the medical professional's instructions. For example, a treating doctor would not prescribe Marinol to Plaintiff "unless he quits home use of marijuana due to excessive amounts and intoxication/abuse concerns that developed with his paranoia." (AR 488). Another doctor, completing a psychiatric discharge summary of Plaintiff, noted "Diagnostically, I think marijuana can explain all this gentleman's problems." (AR 415). Accordingly, Plaintiff's argument that "[b]ecause the record is clear that [Plaintiff's] marijuana use was as a medical treatment, it cannot be considered 'drug addition,' pursuant to 20 C.F.R. § 416.935, and rather is analogous to the use of opioid pain medications, whose side effects are considered in the determination of disability" (Docket No. 15 at 29) fails. The relevant Social Security Ruling, SSR 13-2p, 2013 WL 621536, which provides interpretation of the "drug addiction and alcoholism" materiality standard does not exclude marijuana use when marijuana is prescribed under state law. While it does exclude "prescription medications taken as prescribed.," 2013 WL 621536 at *3, the record does not establish that Plaintiff was using marijuana "as prescribed" by a medical provider. As explained above, the record does not provide the prescription or information from the prescribing medical

provider. Further, the record does contain information showing that Plaintiff was using marijuana for non-medical reasons (e.g. to celebrate Jerry Garcia's birthday). It is hard to imagine that such use is "as prescribed." The Court therefore concludes that the record makes clear that Plaintiff used marijuana for purposes other than pain management. Just because Plaintiff was prescribed medical marijuana under state law, does not mean he could not also be addicted to marijuana under 20 C.F.R. § 416.935. For these reasons, the Court concludes that Plaintiff's argument that it was error for the ALJ to apply 20 C.F.R. § 416.935 rather than analyzing Plaintiff's use of marijuana under 20 C.F.R. § 416.929 fails.

## **Conclusion**

For the reasons set forth above, the Commissioner's decision is AFFIRMED.

Dated this 20th day of September, 2017.

BY THE COURT:

*/s/ Michael J. Watanabe*
MICHAEL J. WATANABE
United States Magistrate Judge